The next case today is Centro de Periodismo Investigativo, Inc. v. Financial Oversight and Management Board for Puerto Rico, Appeal Number 21-1301. Attorney Bedenstock, please introduce yourself for the record and proceed with your argument. Thank you. Good morning. May it please the Court, my name is Martin Bedenstock. I'm an attorney at Proskauer Rose LLP. We represent the Financial Oversight and Management Board for Puerto Rico as appellant. May I reserve three minutes for rebuttal? Yes, you may. Thank you. Mr. Bedenstock, from my point of view, if you could focus on the conflict preemption argument that you have made. You've made a series of different types of preemption arguments, but I'd like you to start with that one, please. Sure, Your Honor. There are three points about conflict preemption that I'd like to emphasize. The first is that... I'm sorry, I got to the wrong point in my notes. Okay, well... That's okay, I got it. Okay. In PROMESA section 101-H4, it authorizes the board on a majority vote to conduct any business in private session. That is definitely in conflict with the notion that documents about that private session or pertaining to it are subject to full disclosure when Congress has authorized it to be private, meaning people are not allowed to watch and listen. Second, PROMESA section 108-A1, that provision says neither the governor nor the legislature may exercise any control, supervision, oversight, or review over the oversight board or its activities. It's indeed a conflict for Congress to have gone out of its way to say the governor and legislature cannot review the oversight board, but all the people can? The people would know stuff that the governor and legislature are not allowed to know. That is a direct conflict. Third, PROMESA section 104-P. It identifies a particular investigation that the oversight board was asked to make and provides that the oversight board shall make public the findings of that investigation, which is under PROMESA section 104-O. Your Honor, Congress clearly looked at what should be disclosed, clearly looked at the need for confidentiality for the oversight board to fulfill its statutory mission of restoring fiscal responsibility and market access, and clearly identified the disclosures that must be made and identified what the oversight board can do in private. I'm a little puzzled by a couple of these arguments. One is if the board can hold private hearings and get executive sessions and it follows the rules, so therefore they can't get anything that has to do in one of those executive sessions. That's fine. But it doesn't seem to spread to everything else. And your argument that because the governor or the legislature can't review what the board does, the government and the legislature can't review what a United States district court does either, but certainly the trials have to be open to the public. So I'm not seeing the nexus here between the provisions that you're pointing to and the breadth of the immunity you want from the law that would otherwise apply to you as a public entity of Puerto Rico. Judge Chiara, in respect of the 108A1, which says the governor and the legislature may not exercise any review over the oversight board or its activities, that is going to precisely the records, documents, work product of the oversight board. It would be unthinkable that Congress would say the governor and legislature can't look at what you're doing, but everybody else can. I agree with you on that, but it doesn't say they can't look. It says they can't review. And I go back to the point I made earlier. They can't review a decision of the United States district court in a criminal trial either. Isn't that clear? And yet you wouldn't hold that the criminal trial, public trial rights don't apply and the public can know what goes on at a trial. Similarly, they can't review what the board does, but that doesn't mean that what the board does is kept hidden. I think we're having a difference on the meaning of review. It's in the phrase exercise any control, supervision, oversight, or review. I don't think the word review in that statute means review that your honor can conduct. You can reverse, vacate, etc. It means can you look it over? Can you see it? And that's what Congress is saying. Why shouldn't that be viewed as a statement that they have plenary jurisdiction over the fiscal matters, but it doesn't mean that their work can't somehow be viewed. To say otherwise means that they can exercise their responsibilities in secret with no oversight from the public. Well, Congress did appreciate the difficult job they assigned the oversight board. They walked into a distressed financial situation that Congress found in Section 405 of PROMESA, and they were asked to somehow reduce payments to creditors and or reduce expenditures for public services. Those are difficult, sensitive things to do, and I think Congress appreciated that the seven uncompensated members it was appointing to serve on the board should not be subject to being reviewed and subject to public whatever for making these difficult decisions. It seems that argument, if I'm following you correctly, would lead to the conclusion that every single thing that the board does could be kept in secret unless there's a provision in PROMESA saying that it has to be disclosed. Subject to those few exceptions, even when you're in a bankruptcy, even when you're before Judge Swain, you could keep the commonwealth from filing or the public from seeing it. You could file it under seal. Your Honor, the response to that is that PROMESA has other provisions requiring full disclosure of the fiscal plan, the budget investigations, the disclosure statement for the plan of adjustment. The outcome of all of the board's decisions is not only public. The board has a website where Your Honor could find it right this second and have full disclosure of all of the key decisions the board has made. What Your Honor would not know is what were the discussions with government officials who said, ìCut this program, not that program.î That background, Your Honor is quite right, you would not know. All of the board's workings are transparent and the outcome is on the public record. But that background, are you conceding that background would be disclosable under the Puerto Rico disclosure laws? I thought that you had an argument that even under Puerto Rico law, those type of deliberative processes would not be disclosable. Well, if we are oppressed, we will certainly have to make that argument and we will hope that we are correct in making it. But that's an uncertainty. Yes, Judge Ong. Yes, you've given the responses that are in your brief. The PROMESA requires certain disclosures. You've also argued that Puerto Rican law does protect some of this stuff, but you don't want to be put to the uncertainty of having to go before a magistrate judge and get a determination on the balancing act. I understood you to also be making two more subtle forms of conflict argument. The first is the burdensomeness and the second is the frustration of the purposes for which Congress enacted PROMESA. Given the sheer volume of the documents that have been requested, the sheer volume of stuff that would have to be done just to produce a privilege log, you referred to the fact that there are just seven volunteer members and a small staff. You haven't articulated those, but that's what I understood from your brief. You were also arguing. Is that correct? That's absolutely correct. It goes to the sovereign immunity point that sovereign immunity doesn't just protect from the judgment. It protects from the process. The CPI admits in its answering brief that there are 40,000 documents at issue. The magistrate, Judge McGivern, said it's not just a privilege log. He characterized Joint Appendix 303 as something that would take him a year if he had to look through the documents, so he wants an expanded privilege log that basically tells enough about each document so he can tell if it fits within any of the applicable privileges. That is a gigantic burden, and CPI's argument that we can just hire people to do it doesn't make it less of a burden and doesn't make it less of a risk of the outcome of a weighing test or some type of discretionary determinations. We believe that sovereign immunity provides an absolute protection against that. I know the court is familiar with Penhurst, Edelman, Seminole Tribe, and with the Metcalf case, which involved Puerto Rico Aqueduct and Sewer Authority, where the court went out of its way to say we're protecting you against the process, not just the judgment. That's why the interlocutory appeals are automatically allowed because otherwise you have to go through the process before you can vindicate your right to sovereign immunity. I recognize CPI says we're not a sovereign for this purpose, but as recently as 2020, this court in a decision written by Judge Howard decided that the Eleventh Amendment sovereign immunity does apply to Puerto Rico. That was simply consistent with decisions both before and after Sanchez-Valles, which had nothing to do with whether Puerto Rico is a sovereign, simply whether it's a different sovereign than the United States for double jeopardy purposes. In any event, they can't go to federal court to force you to comply with a state law obligation. Their response is, yeah, but Congress put in there that sort of catch-all provision that otherwise you all ought to try to be complying with local Puerto Rican disclosure law. What's the response to that? There are two responses, Your Honor. First, that's what we did, for good or bad. We did not trigger the automatic state-pending appeal of PROMESA Section 106C and appeal the first denial of our first motion to dismiss on the first complaint. Instead, we turned over 18,000 documents in addition to our entire public website, which as I mentioned, gives the fiscal plan, the budget, the outcomes of all of the sensitive deliberations, etc., so it's been a transparent process. Finally, Congress agrees that this is a sovereign, and I point you to PROMESA Sections 303 and 305, which are virtual copies of Bankruptcy Code Sections 903 and 904, which are in the Bankruptcy Code for municipalities precisely so that Chapter 9 of the Bankruptcy Code complies with the Tenth Amendment. It's not just the First Circuit that treats Puerto Rico as a sovereign. Congress thought so, too. Are you saying the Tenth Amendment applies to municipalities, that they are sovereigns under the Tenth Amendment? I'm saying the reasons Bankruptcy Code Sections 903 and 904 are in the Bankruptcy Code, which only applies to municipalities, there's no Bankruptcy Code for states, is that that was to comply with the Supreme Court's Ashton and Beckins decision about the necessary requirements for the Tenth Amendment. Yes, and I believe the Supreme Court reinforced that in a decision about six years ago written by Justice Thomas. Anything else, Mr. Bainstock? Thank you, Your Honor. I think I can wait for rebuttal, Your Honor. Go ahead. Are you saying that all Puerto Rican laws that would make your doing your work substantially more expensive are preempted? No, Your Honor. There's no litmus test for expense, and we haven't suggested that. That's a factor to consider. What the real test is and the board goes by, and I urge the court to use it as well, is does the law materially get in the way of the board's carrying out its statutory mission to restore fiscal responsibility and market access to the Commonwealth of Puerto Rico? There are a lot of factors that go into that. I would not say that expense alone is a litmus test, absolutely not. Let me just carry that out a little further. I understand you to be saying that some of this information, apart from the question of expense, would in the end undercut the ability of the board to accomplish its tasks. Absolutely. People wouldn't feel free to communicate by email or letter or anything in writing if it's all going to be publicized. These are highly sensitive discussions about tradeoffs between services and debt payments and the like. But your argument is that in this suit, and the court below had ordered production of certain documents but also logs, that you don't think that even the court should be allowed to take a look at what you deem to be private information. Under the Supreme Court's decision in Metcalf and similar decisions, the board is entitled to be protected from the process as well as the final judgment. The process includes doing things like the expanded privilege log that Magistrate Judge McGivern required if he's going to apply applicable privileges to any documents at all. As I understand the logic of the argument, while I assume any such log, if it were ordered to be produced, would be produced under seal, it then becomes a discretionary decision for a Magistrate Judge and not for the board as to what in fact is privileged and what is not. Things may be disclosed over the objection of the board and the board would have no choice at that point but to take further appeals. Yes, and we have no assurance that it would be under seal or that CPI couldn't send it to whomever it wanted. Did the Magistrate Judge say that the privilege log would not be submitted under seal? He didn't say one way or the other. Wasn't he going to do an in-camera inspection? That doesn't make it under seal. The purpose of the privilege log was to enable him to avoid an in-camera inspection of the documents, which he said would take him a year. That's a Joint Appendix 303. In my experience, if a judge doesn't volunteer a seal at the beginning, I don't assume I'll have one. We could ask for one, Your Honor. It's an uncertainty. That's all I can say. Okay. Thank you. We'll hear you on rebuttal later. Thank you. Thank you, Mr. Bienenstock. Please mute your audio and video at this time. Attorney Birkin, if you could unmute your audio and video and introduce yourself on the record to begin. Good morning. Once again, it's Judith Birkin. I represent the CPI. I'm here with co-counsel Stephen LaRochelle and Carla Minette, who's the executive director of the CPI. I think unless the court wants to hear on something else, I could start with the preemption argument, which is purely based on inconsistency. At the district court, there were arguments about occupying the field by exempt or implicit. Ms. Birkin, I think you should deal with the conflict preemption, but you're also going to have to address the 11th Amendment issue. Okay. Is there a preference? Because on the conflict preemption, I think the judge's questions really brought out what I would have said with respect. I mean, I'm not giving credit that you believe all the questions, but it would seem to me that... Why don't you state what your argument is? But what the argument is on preemption, there is no factual basis for the inconsistency argument. In fact, nor is there any factual basis for the notion that this would interfere with the board's action because the board actually reviewed the 40,000 documents. And I would like to make an appendix reference to page 380 and 381. There's a lot of things that are not in the appendix, but they're in the original document. But there, we describe, this is, I believe, in our motion in opposition to the appeal to the judge or the objection to the judge that the board made. And if you look at, we make reference to a letter that was sent to us explaining, finally, that there were documents withheld because for a long time there were no documents, there was no explanation. And it talks about 16,395 documents on the deliberative process privilege, which are the kind of documents that Mr. Bienstock was making reference to. But those are merits questions. Those are questions that you go and take in camera. Whatever you're going to do, those are merits questions. But what's very interesting about this listing of the 22,000... Ms. Birkin, I'm sorry. You just lost me. Okay. If they are a deliberative process within the context of the disclosures that Congress required to be made and the disclosures that Congress forbade to be made, why doesn't it just stop right there? Because this is not an issue of occupying the field. No, no, no. That's a totally different analysis. But as I understand it... The question is conflicts and burdensomeness, not occupying the field. You have the legal categories mixed up. I absolutely agree. And where I was going was in that document that I'm referring to in Appendix 383-81, it says that there are 43 documents, 43 that have already been identified, that the board asserts would cause significant harm to the board's ability to conduct its duties. That's all. They have analyzed, at least on the first case, the 40,000 documents. They have given us 18,000 at their will. And then they have said that it's a conflict for them to go further. And as to the documents they have already analyzed, there's no question about that because they gave us precise numbers. As to those documents, there's 43 that would interfere with their ability to carry out their work. I'm sorry, I don't read that, as you apparently do, as an admission that they don't have to do with the categories that Congress forbade them to disclose. I think you may be reading more into this than is actually there. Anyway, let's go on. Okay, let's move on. I do want to, just one last point, I'm sorry on that, is that we should also look at the declaration of, what's her first name? And she also doesn't address this inconsistency argument. She spends, as did Mr. Bienstock, the bulk of that affidavit, 15 pages of it, talking about the need for deliberative process privilege. But that's an issue that should be addressed to the court below, whether it's the magistrate or the district judge. With that, I'm content to move on to the 11th Amendment because I do think that's critical. I'd like to stay. Is that okay? Yes, go ahead, please. Thank you. You know, there are different reasons why the 11th Amendment does not apply here. And this is their hook, the board's hook, to get into the jurisdiction, the appellate jurisdiction of this court. The different reasons include the Sanchez-Valle analysis. We'll put that aside for now. There are distinctions between, you know, sovereignty for them. That's good. We'll put it aside. But you don't have to reach that issue. Why not? One, because of the waiver and abrogation. We'll go into that later. But most important, I think you have to look at the policy concerns, which motivated the approval of the 11th Amendment back 200 years ago. And those which motivated Pennhurst. We are talking about a board that was not created by the state, that was legislated by Congress, appointed by the president. This is not an example of the exercise of sovereignty by a state. This is a totally different animal. And if you want to look at it, the power of the board comes from, as you know, the territorial clause. So, it's a different animal. It's not the same thing. And the, you know, in their brief, page five of the reply brief by the board, the board says, the Commonwealth government has chosen not to waive immunity in federal court. The Commonwealth government was not involved with the approval of the PROMESA board. That was something that Congress did, pursuant to its authority. The Congress said, among other things, that the board is separate from the Commonwealth government in terms of whether it's an instrumentality, that kind of thing, but that it is an entity within the government of Puerto Rico. So, in that way, it has the same immunity as the government of Puerto Rico would have with respect to public disclosure claims. And I believe the questioning by, I think, all three members of the panel goes to the difference between actions against the board for liability, that kind of thing, as prohibited in section 105, and the, you know, a public disclosure requirement, which is a different kind of thing. There's also the question about no forum, that what Congress intended with respect to this. It's not precisely the 11th Amendment, but it does go into the whole motivation behind Pennhurst, because Pennhurst presumed, and not explicitly, I believe, but certainly implicitly, that there would be another forum to address these questions. That would be a state court forum. Or even the case that is cited by the defendants in their brief, which is Lane. Lane is a copyright case in which it was decided that the federal copyright statute did not authorize an action in federal court against the state. It did not abrogate 11th Amendment immunity for that purpose. But behind Lane... Ms. Birkin, you're confusing me some when you refer to 11th Amendment immunity. I thought that, at its essence, the 11th Amendment was enacted to, as a jurisdictional matter, to divest what had previously been seen as the Article III jurisdiction of federal courts to hear claims against states. And the 11th Amendment takes away that jurisdiction, subject to the subsequent passage of the 14th Amendment, where Congress may restore it. And then here we have Congress actually restoring federal court jurisdiction by including in PROMESA provision that a suit like this shall be brought in federal court. Yes, that's absolutely correct. That's a separate argument from my argument about state sovereignty. Ms. Birkin, I thought the Supreme Court and our circuit law was quite clear that the grant of a cause of action is in no way to be understood as a waiver of 11th Amendment immunity. Yes, I think that's correct. All right. What was next? So, going back to Lane, Lane is cited by the defendants as meaning that even if there's no forum, even if it deprives the claimant of a forum. And if you look at Lane, what Lane says is there are forums. Judge Celia dedicates about five pages at the end of the decision to saying there are forums. You can't go into state court. Here, the state court action, and that does go to Judge Gallardo's question and your elaboration of the question, there is no state court forum. We are left without a forum to do what is done every single day. I'm sorry, that was four minutes. In the courts of Puerto Rico, which is that Puerto Rico has said to the people of Puerto Rico, the CPI and the people, that we can go into court and we do it all the time to get access to documents. All right, that is something that is firmly established. So, why should the board be different? Now, Mr. Bienstock, as I understood, was arguing the merits of the deliberative process privilege. I'm sorry, this action is in federal court, but the Puerto Rican courts have also handled cases concerning disclosure and have looked at the issue of preemption, correct? So, I don't understand that there is no alternative forum. I do understand that the question of preemption might have to be adjudicated in both forums.  I don't know. I know the Puerto Rico case law quite well, and I may be mistaken, but I don't know of a case that's dealt with preemption. I think my law clerk found one, but I don't remember either. I honestly don't know, and I teach this stuff, and I don't think so, but maybe wrong. There's a lot going on. But I think in this case, we studied it a lot before we went into federal court and decided there was no way we could go into state court with this, independently of preemption. Preemption is, to a certain degree, the issue here that gets us before you is the 11th Amendment issue, obviously. And preemption is an issue that is subsequent to that. I mean, yeah, it's the first issue that has to be decided. I don't believe there would be pendent jurisdiction over that in this particular context of the interlocutory appeal. And I haven't even talked about waiver, but I think it's very well set forth in our brief. But let me talk a little bit, if I may, about the 11th Amendment, just to burst a few bubbles that are in the board's brief. There are no first secret opinions after Sanchez-Faillé that deal with Sanchez-Faillé. Judge Thompson was on the only two panels after that. Grajales was decided days after Sanchez-Faillé. And the other one, Borràs, just simply ignores the issue because they say there's failure to state a claim. There is no case law. The other thing is that's interesting, though I don't think crucial to our case, but I have to mention it in my preparation for this argument, we see that in Mecafenetti, the Supreme Court has a footnote that they say they don't know if the 11th Amendment applies to Puerto Rico. So that was just assumed by the parties. Yes, Judge Lynch, that is the case. Yes, no, I agree with you. But I thought Judge Howard's decision this last year established that as a matter of our circuit law, Puerto Rico is covered by the 11th Amendment. Am I wrong? I don't know which case that is. Mr. Banstock referred to it. It was an opinion by Judge Howard. I don't have the name. I honestly don't know because the two cases they cited was Borràs and Grajales. Okay, well, let's move on. Maybe Judge Thompson can remember because she was on both of those panels. But I don't recall. I may be mistaken again, but I do not recall. Section 1068 tells us we have to go into federal court. So this is different from all the other cases where there were alternative forms and things like that. So there's a lot of policy arguments here. Time has expired. Finish your thought, please. One is the policy argument that I'm sure the court would avoid making in terms of, you know, Sanchez-Valle and its effect. But the other thing is the nature of the board and how it was approved and does it have anything to do with the policy concerns, which motivate particularly not the 11th Amendment way back then when it was debts and stuff like that. But what motivated the Penner's decision, which was... Yes, that was your opening argument. Okay, I'm repeating it. But thank you very much for your time. Thank you. Thank you. At this time, if Attorney Birkin would please mute her audio and her video. And Attorney Beenstock, you have a three minute rebuttal. And please begin by reintroducing yourself on the record. Thank you. Martin Beenstock of Proskauer Rose, LLP for the Oversight Board, Your Honors. First, the decision that was just being referred to was Borges-Barrero at 958 F-3rd 26 at page 33. Judge Howard says Puerto Rico is treated as a state for 11th Amendment purposes. In respect of the issue that Judge Kayada raised about 106 re-granting federal jurisdiction, that is the crux of the error below. The court below at CPI's urging said, well, that has to be considered a waiver of sovereign immunity because it's an explicit grant of subject matter jurisdiction for actions against the board. And as we showed in our brief, and as the Supreme Court decisions in Pennhurst, Edelman, Seminole Tribe all show, there has to be subject matter jurisdiction for, number one, actions in furtherance of the 14th Amendment because of Section 5 of the 14th Amendment. And there has to be federal court jurisdiction to enforce the supremacy of federal law by prospective injunctive relief. This court has actually presided over at least two reviews of such actions that were filed against the board by the governor was one and the legislature of Puerto Rico was another that questioned the power of the board, etc., granted under a federal statute. And the court below determined the supremacy of PROMISA in terms of what power it gave the board, and this court affirmed in both instances. So that demonstrates that the court below was exactly wrong when it said, well, the only purpose of 106 could be to revoke sovereign immunity. Obviously, that's not the only purpose. The purpose was to provide the subject matter jurisdiction that the Supreme Court has said has to exist somewhere so that the 14th Amendment and the supremacy of federal law can be carried out. Once you go past that, CPI has no argument. The court below has no argument. And it didn't come up earlier, but we explained in our brief going in, and CPI offered no argument, that the court below drastically misread legislative history of Bankruptcy Code Section 106, saying it was actually history of PROMISA Section 106. That's wrong! So in what court would you enforce Commonwealth law against the board? There's only one court that it can be, and that's the Title III court, or the district court in Puerto Rico, because PROMISA says that any action has to be brought in federal district court. But then in federal district court, if you're correct, virtually all actions to comply law with Puerto Rico, unless they had an equal protection of 14th Amendment type issue, or a specific provision PROMISA, if it was just Commonwealth law, under your version, the 11th Amendment would bar the suit. That's exactly right, Your Honor. And I fully acknowledge that that is not a conventional normal result, but that also conforms to provisions of PROMISA, such as PROMISA Section 106E, which deprives the federal court of jurisdiction over anyone contesting the Oversight Board certifications, any certifications, whether the physical plan, the budget, restructuring, a plan of adjustment, etc. Time has expired. May I just finish that sentence? Yes, you may. PROMISA did insulate the board from attack in court on a lot of issues. That's just a fact. Okay. Any further questions? No. Thank you to both counsel in this case. We appreciate the assistance you've given the court. Thank you. That concludes argument in this case. Attorney Bienenstock and Attorney Birkin, you should disconnect from the hearing at this time.